**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REBECCA SAILSBERY; ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF SAUK VILLAGE, an Illinois ) <br> Municipality; ROBERT FOX, ) <br> ) <br> Defendants. ) <br> _____) | Case No. <br><br> Judge <br><br> Magistrate Judge |

## ***COMPLAINT AT LAW***

NOW COMES the Plaintiff, REBECCA SAILSBERY, by and through her attorneys, ELLIOT R. ZINGER & ASSOCIATES, and presents her Complaint at Law and in support thereof, complains as follows:

### ***NATURE OF THE ACTION***

1. This is an action under Title VII and Sections 1981, 1985 and 1983 of the United States Code to correct unlawful employment practices on the basis of race and to provide appropriate relief to REBECCA SAILSBERY ("Plaintiff"), who was subjected to racial discrimination, retaliation, harassment, demotion and denial of promotion by her employer, THE VILLAGE OF SAUK VILLAGE ("Sauk Village").

### ***JURISDICTION AND VENUE***

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331 and 1343.

3. Venue is proper where the unlawful employment practices alleged below were committed, and all parties reside, in Cook County, Illinois, a county within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

4. All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of a Right-to-Sue letter on August 23, 2012 issued by the United States Department of Justice. *See* Exhibit A.

## *THE PARTIES*

5. At all relevant times, Sauk Village was incorporated in the State of Illinois and is a municipality within the State of Illinois.

6. Plaintiff REBECCA SAILSBERY ("SGT. SAILSBERY") is, and at all times complained of herein was, a duly qualified peace officer employed by defendant VILLAGE OF SAUK VILLAGE ("the VILLAGE") a municipal corporation.

7. Defendant ROBERT FOX ("FOX") at all times complained of herein was a duly qualified peace officer employed by the VILLAGE as its chief of police.

## *STATEMENT OF FACTS*

8. SGT. SAILSBERY has been a peace officer of various ranks with the VILLAGE, including Deputy Chief and Interim Chief of Police, for the past 20 years.

9. In February 2010, SGT. SAILBERY filed an EEOC Charge against the VILLAGE and subsequent lawsuit in Federal District Court. That suit was settled in July 2011.

10. On November 22, 2011, Towers appointed FOX (African-American) as chief of police despite knowing Fox was less qualified than Caucasian applicants by education, experience and rank.

11. Prior to November 22, 2011, Towers knew that FOX had failed the "sergeant's examination" while at the Village of Dolton but that the Village of Dolton had changed FOX'S score to make it appear that FOX had in fact passed the exam.

12. Towers' sister-in-law, Gail Towers, was the Secretary of the Village of Dolton's Board of Fire & Police Commissioners and was responsible for altering Fox's sergeant's examination test results and forging the signatures of other commissioners on the resultant eligibility examination.

13. Prior to November 22, 2011, Towers knew that Fox had covertly accepted a second full-time position with Cook County while he was Dolton's chief of police and without first notifying the Mayor of Dolton, who as a result gave Fox the choice of resigning or being terminated as Dolton's chief of police.

14. Shortly after his appointment, FOX took "last chance agreements" out of troubled officers' employment files and in exchange utilized these officers to harass and retaliate against SGT. SAILSBERY.

15. On December 6, 2011, FOX assigned all of the chief's duties to SGT. SAILSBERY and her former co-plaintiffs.

16. On December 14, 2011, SGT. SAILSBERY took a citizen's complaint against FOX and turned it over to then-village manager Henrietta Turner. Rather than investigate the citizen's complaint, Ms. Turner berated SGT. SAILSBERY for the manner in which the complaint was created.

17. In late December 2011, FOX ordered SGT. SAILSBERY to assume all the duties of rank of deputy chief, but refused to promote her to deputy chief or to pay her commensurately with the position. At the same time, FOX admitted that "people think I was appointed to fire all the white people."

18. On December 30, 2011, FOX told a number of SGT. SAILSBERY'S subordinates that the DUI detail she supervised was "ran like a circus" when it fact it was not.

3

19. On January 10, 2012, SGT. SAILSBERY submitted a written complaint of FOX'S unethical and retaliatory behavior to the village clerk and interim village manager. The VILLAGE did not conduct any investigation of SGT. SAILSBERY'S complaints.

20. On January 13, 2012 FOX removed SGT. SAILSBERY from the duty of responding to Step I grievances in the police department in retaliation for having filed the complaint of January 10, 2012.

21. On January 18, 2012, SGT. SAILSBERY learned that Ms. Turner had shown her January 10, 2012 complaint to FOX in violation of the village's guarantee that such complaints will remain confidential.

22. On January 18, 2012, Mayor Towers and the VILLAGE became aware that FOX assisted a village resident in illegally removing all the boxes of an upcoming village newspaper from the village hall and placing them in a resident's trunk so that they would be destroyed rather than distributed to residents. Despite knowledge of such conduct, Mayor Towers failed to act to terminate or otherwise discipline FOX.

23. On January 27, 2012, FOX demoted SGT. SAILSBERY from her former administrative position to street patrol and took away her private office in retaliation for having filed a complaint on January 10, 2012. FOX was aware that the demotion would leave SGT. SAILSBERY unable to adjust her hours to accommodate child care for her three children, one of which is special needs.

24. As a result of the demotion, SGT. SAILSBERY was working approximately 20 hours of overtime each week because she was now the senior officer on the street. Once FOX learned that SGT. SAILSBERY was earning such overtime, he changed minimum staffing levels

to divest her of the overtime and SGT. SAILSBERY'S weekly pay was thereby reduced by approximately $1000.00.

25. On February 7, 2012, SGT. SAILSBERY filed a second complaint of racial discrimination, harassment and retaliation with the village clerk. Once again, the VILLAGE refused to investigate SGT. SAILSBERY'S complaint.

26. On February 16, 2012, FOX retaliated against SGT. SAILSBERY for filing the second complaint by revoking her take-home squad car privileges without warning. In fact, SGT. SAILSBERY was stranded at work without a ride home the first day her take-home car privileges were revoked.

27. On February 20, 2012, FOX denied SGT. SAILSBERY'S request for a day off using "benefit time" without justification.

28. On March 27, 2012, FOX attempted to appoint Officer Robert Smith ("Officer Smith"), a less-qualified African-American police officer, to the rank of Deputy Chief in lieu of SGT. SAILSBERY. SGT. SAILSBERY was not permitted to interview for the promotion.

29. Officer Smith was not statutorily qualified for the promotion because he had not been a full-time sworn member of the police department for five years at that time.

30. Once FOX learned that Officer Smith was not qualified, he left the position vacant rather than promote SGT. SAILSBERY.

31. On April 30, 2012, FOX transferred SGT. SAILSBERY from the "day shift" to the "afternoon shift" so that she would not be acting chief while he attended a conference. FOX also transferred an African-American sergeant from the afternoon shift to the day shift so that he would be acting chief in lieu of SGT. SAILSBERY in FOX'S absence.

32. On May 25, 2012, FOX approved a benefit time day off for a less senior officer and denied the same request for SGT. SAILSBERY. This was not only violative of the applicable collective bargaining agreement, but done in retaliation for SAILSBERY having filed complaints of discrimination.

33. In June 2012, FOX learned that SGT. SAILSBERY had reserved vacation time for the week of July 4, 2012. FOX then announced that all July 4th vacations were cancelled but later approved vacations for three subordinate officers. Again, according to the collective bargaining agreement, SGT. SAILSBERY should have had first choice of vacations.

34. On June 18, 2012, Trustee Enoch Benson announced at a village board meeting that SGT. SAILSBERY was a "coward," engaged in "dereliction of duty," was "incompetent," "needed to be disciplined" and that because she had "filed lawsuits against the village, and continues to file lawsuits against the village…needs to be dealt with."

35. FOX notified SGT. SAILSBERY'S subordinates that they were no longer required to acknowledge the chain of command as it related to her or heed SGT. SAILSBERY'S direct orders.

36. On July 11, 2012, FOX threatened SGT. SAILSBERY with felony arrest for official misconduct without any basis.

37. On July 12, 2012, FOX contacted the Cook County Integrity Unit to conduct an investigation of SGT. SAILSBERY unintentionally dropping a charger on fellow officer Timothy Holevis' hand. FOX had not ordered such investigations officers that made simple errors where the officers had not made complaints of discrimination against FOX.

6

38. On August 16, 2012, FOX told SGT. SAILSBERY that she was forbidden from filing complaints against him to anyone but Ms. Turner. Ms. Turner had in the past shown herself to be biased in favor of FOX and to facilitate his discriminatory and retaliatory conduct.

39. On August 16, 2012, FOX had to leave work to allegedly tend to a sick child. He placed an African-American sergeant of lower rank as acting chief in lieu of SGT. SAILSBERY.

40. FOX denied SGT. SAILSBERY'S request for a day off on August 26, 2012 using compensatory time but provided a less-senior officer with the same day off.

41. On August 17, 2012, SGT. SAILSBERY requested a day off for September 3, 2012. FOX denied SGT. SAILSBERY'S request but allowed a less-senior office to take off September 3, 2012.

42. On or near October 26, 2012, the Board of Trustees was so desperate to terminate FOX that it eliminated the position of "Chief of Police" for the first time in its history.

## *COUNT I – VIOLATION OF TITLE VII – FAILURE TO PROMOTE*

43. SAILSBERY repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-two as if fully set forth herein.

44. Since August 2011 and continuing through at least October 26, 2012, the VILLAGE engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2.

45. The VILLAGE discriminated against SAILSBERY with respect to the terms and conditions of her employment when it refused to promote her because of her race in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

7

46. The VILLAGE'S employment practices and conduct were intentional, deliberate, willful and conducted in callous disregard of SGT. SAILSBERY'S rights.

47. The VILLAGE'S policies and practices have produced, *inter alia*, disparate treatment and disparate impact against SGT. SAILSBERY with respect to the terms and conditions of her employment.

48. By reason of the VILLAGE'S discriminatory practices, SGT. SAILSBERY is entitled to all legal and equitable remedies available under Section 2000e *et seq.*, as amended by the Civil Rights Act of 1991.

49. The discrimination was sufficiently severe and pervasive to alter the conditions of SGT. SAILSBERY'S employment and create a hostile working environment.

50. The effect of the practices complained of above has been to deprive SGT. SAILSBERY of equal employment opportunities, promotion, and otherwise adversely affect her status as an employee because of her race-Caucasian.

51. Sauk Village at all relevant times acted with malice or reckless indifference to the federally protected rights of SGT. SAILSBERY in violation of § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

52. As a result of the aforementioned intentionally discriminatory acts of the VILLAGE, SGT. SAILSBERY has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, SGT. SAILSBERY demands judgment against the VILLAGE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title

VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

## *COUNT II – VIOLATION OF TITLE VII – RETALIATION*

53. SGT. SAILSBERY repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-two as if fully set forth herein.

54. SGT. SAILSBERY participated in a protected activity when she filed a complaints with the EEOC, a federal lawsuit and complaints to the village clerk and village manager all alleging race-based discrimination, harassment or retaliation.

55. Mayor Towers and FOX were "policymakers" within the VILLAGE at all times complained of and both were SGT. SAILSBERY'S "supervisors" as defined in Title VII.

56. Mayor Towers and FOX were aware that SGT. SAILSBERY had engaged in protected activities as Mayor Towers was named in her prior EEOC Charge and FOX was the subject of her complaints to the village clerk and village manager.

57. Mayor Towers and FOX harassed, discriminated and retaliated against SGT. SAILSBERY and altered the terms and conditions of her employment in retaliation for having filed a prior EEOC Charge, federal lawsuit and complaints to the village clerk and village manager.

58. As a result of the retaliation alleged in the preceding paragraphs by Mayor Towers and FOX, SGT. SAILSBERY suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life and severe emotional distress.

WHEREFORE, SGT. SAILSBERY demands judgment against the VILLAGE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title

VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

### *COUNT III – SECTION 1981 RACE DISCRIMINATION*

59. SGT. SAILSBERY repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through forty-two as if fully set forth herein.

60. Pursuant to Civil Rights Act of 1871, 42 U.S.C. § 1981, ("Section 1981") it is unlawful to discriminate in contracts, including employment contracts, on the basis of race.

61. SGT. SAILSBERY always performed her duties as a peace officer beyond her employer's expectations and was qualified to be the VILLAGE'S deputy police chief.

62. FOX refused to promote SGT. SAILSBERY to deputy chief and instead attempted to appoint a statutorily unqualified African-American to the position.

63. FOX and the VILLAGE failed to advertise or otherwise post a vacancy at the deputy chief's position.

64. FOX denied SGT. SAILSBERY the opportunity to interview for the deputy chief position.

65. The VILLAGE and FOX'S acts, as set forth above, constituted willful and unlawful race discrimination, in violation of Section 1981.

66. Defendants acted at all times under color of law in discriminating against Plaintiff.

67. That as a result of the aforementioned deprivation of federal rights, Plaintiff suffered, and will likely continue to suffer, grievous harm including without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, SGT. SAILSBERY demands judgment against the VILLAGE and FOX in an amount in excess of $100,000.00 and for all legal and equitable relief available including promotion, compensatory damages, punitive damages, attorneys' fees, litigation expenses and cost of suit.

### *COUNT IV – MONELL CLAIM*

68.   SGT. SAILSBERY repeats, re-allege and incorporate by reference the factual allegations of paragraphs one through forty-two as if fully set forth herein.

69.   The harassment, discrimination, retaliation, and refusal to promote was carried out by policymakers of the VILLAGE, including Mayor Towers FOX, with final policymaking authority to carry out the acts complained of in the preceding paragraphs.

70.   The harassment, discrimination, retaliation, refusal to promote SGT. SAILSBERY was part of a custom, policy and practice espoused at that time by the VILLAGE, Mayor Towers and FOX in favor of promoting less-qualified African-American applicants and against similarly situated Caucasian applicants.

71.   Since taking office in 2009, the VILLAGE through Mayor Towers and his hand-picked police chiefs have attempted to appoint statutorily unqualified individuals as deputy chief in lieu of qualified Caucasian candidates.

72.   As a result of employing a custom, policy and practice espoused by Mayor Towers and FOX to promote less qualified African-American candidates to deputy chief in lieu of SGT. SAILSBERY, she suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, SGT. SAILSBERY demands judgment against the VILLAGE in an amount in excess of $100,000.00, and for all legal and equitable relief available including reinstatement, punitive damages, attorneys' fees, litigation expenses and cost of suit.

### *JURY DEMAND*

73.     Plaintiff demands trial by jury pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 a (c) (1).

>Respectfully submitted,
>
>ELLIOT R. ZINGER & ASSOCIATES
>
>By:     /s/ Patrick J. Walsh
>            Patrick J. Walsh, Esq.
>            One of Plaintiffs' Attorneys

Elliot R. Zinger, Esq.
Patrick J. Walsh, Esq.
ELLIOT R. ZINGER & ASSOCIATES
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 782-9464
Atty. No. 6287629